Good morning, and may it please the court. My name is Stephen Koehninger from the Federal Public Defender's Office, and I represent the appellant Malik Ngumezi, who asked this court to reverse the District Court's order denying his motion to suppress. I'd like to reserve two minutes of time for rebuttal, please. Your Honors, in this case, a police officer who possessed only reasonable suspicion of a license plate violation chose to investigate that crime by approaching my client's parked car, opening the door to that car, and sticking his head inside the passenger compartment, all without my client's consent. The question here is whether the Fourth Amendment allows such conduct, and the Supreme Court's decisions in Terry and Michigan v. Long provide the answer, and it is no. The Terry line of cases governs on-the-street investigative encounters based on reasonable suspicion, like the one at issue here, and because the officer in this case conducted a warrantless search of Mr. Ngumezi's vehicle by opening the passenger door and by sticking his head inside the passenger compartment, those searches were only lawful under Terry and Long if the officer possessed reasonable suspicion that, one, my client was dangerous, and two, that there was a weapon in the car. There is no such cause here, and there is no other exception to the Fourth Amendment warrant requirement that justifies the officer's actions in this case. Counsel, before you get further into the legality of the search, one thing that puzzles me about this case is, assuming that the opening of the door and intrusion into the car was a search, it doesn't seem like it really had anything to do with the discovery of the evidence that you're seeking to suppress, that they found the gun not because the officer saw it when he stuck his head in, but under an inventory search, which they did because they didn't have a suspended license, and that wasn't something they found because of the search. So, even if we agree with you, why would it be a basis for suppression? Well, you're right, Your Honor. The search was conducted, there was an inventory search that was only, and I don't think it's disputed, the inventory search only occurred because the car was towed, because of a tow policy based on my client's suspended license. I The information about my client's suspended license wasn't discovered via the search. The questioning that the officer asked of my client regarding his license flowed immediately, immediately from the search, immediately from intruding, immediately from, and in fact occurred while the officer was still intruding inside the car. And so, if the question is the fruit, the statements, the statements are what give rise to the ability to tow the car, those statements are elicited while the officer was actually intruding. And I note that the government, the government doesn't dispute, and it's brief, that these statements were the product of this search. The government's position, it doesn't even invoke any exception to the warrant requirement. The government's entire argument with respect to the exclusionary rule is its suggestion of some free-form balancing between deterrence and with the suggestion that the officer's conduct wasn't flagrant. I'd like to emphasize for the court, flagrancy is not a requirement for application of the exclusionary rule. The government quotes flagrancy repeatedly in its brief, and I note for the court that that is a sub-element of the attenuation exception, which the government has not invoked in this case. But the flagrancy of the officer's conduct is not a prerequisite, and I note that even under the attenuation doctrine, suppression is favored here, most notably because the government doesn't address the first two elements of that exception, which are the temporal proximity, and the statements at issue here, the only statement giving rise to the tow, which is the discovery of the weapon, that flowed immediately from the questioning, and even more importantly, the second component of the attenuation exception is the presence of intervening circumstances. The government hasn't identified any intervening circumstances here, and there are none. There are none. And so the question, and Judge Miller, I'd like to emphasize, the government bears the burden of showing that this evidence is not the fruit of the poisonous tree. That's this court's opinion in Twilley, this court's opinion in Gorman. It has not identified a break in the causal chain. And so I submit that suppression is the correct remedy, and there is no adequate showing that the officer would have come about this information in some other lawful way. So then going back to the question of whether it is an unlawful search, why, I mean, if we start with, under MIMS and Wilson, they can make the driver or passenger get out of the car without any particularized basis. Just opening the door seems less intrusive than that. So why, in light of those cases, do you think this is unlawful? Well, importantly, I think, Your Honor, MIMS, we'll start with MIMS, if that's okay, because MIMS is actually about a driver and not a passenger. MIMS is a case about a seizure. And so what the court is focusing on in MIMS is the intrusiveness on the liberty of the individual. It's not focusing on the privacy interest in a car. And so the court in MIMS held that the, created a bright-line rule allowing an officer to order someone out of a car, finding that was a de minimis intrusion, it was only an incremental intrusion, but only because the driver has already been seized. The Fourth Amendment event, the seizure has already occurred there. And so the language about a minimal intrusion is informed by the fact that there's already a seizure. There's not already a search here. And to, if I may expand on that, the question about whether or not there's a distinction between opening a door and ordering someone out of a vehicle, I think there's a significant distinction for at least two reasons. The first is, any, the cases, and I think it's the Paleo decision and the Cotton decision that suggests that there's not a difference between these two, are really based on a fundamental assumption that is incorrect regarding the nature in which individuals are ordered out of their cars in the day-to-day interactions between police and drivers. I recognize that my experience is not a part of the appellate record, but I can represent to the court in over 15 years of federal criminal practice, these types of orders about exiting a vehicle come in all different varieties. The officer may be in his car ordering over a loudspeaker. The officer may be right outside of his car. Maybe midway between his car and the driver's car. The reason this is significant from a privacy perspective is that in any of those circumstances, the amount of the passenger compartment that will be available to view by the officer is going to vary. And the assumption that opening a door is the same as an order to exit is based on, in my opinion, the faulty premise that an officer always orders someone out of a car while he's standing within one foot of the driver's side door. And I think the second reason that they're different is that MIMS does not address what I think is a very significant issue in this case, which is the Supreme Court's opinion in Jones. Jones, as the court is aware, is an opinion in which Justice Scalia, writing for the court, reinvigorated property rights as a fundamental, fundamental component of Fourth Amendment protection. And so the difference between ordering someone out of a car in MIMS and an officer actually physically occupying an effect, an individual's effect, and opening that door, that is all of the difference in Jones. And Jones reiterated that property rights under the Fourth Amendment are sacred. That's the language of Justice Scalia. Property rights are sacred. And so an officer's act of grabbing the door, opening the door, and sticking his head inside is a physical intrusion in a Fourth Amendment search, even under the most basic framing of the historical premises of the Fourth Amendment. Mr. Keningtree, can I ask you, just to clarify your position on this issue, do you agree that it was lawful for the officer to ask your client for his license and registration, at least up until the point where he may have seen the temporary permit in the windshield? No, it wasn't lawful because it was being done, Judge Schultz. It was being accomplished while he was engaged in a warrantless search of my office. Oh, I'm sorry. My question was bad. I apologize. I mean, he had the right to, in a lawful way, ask him for his registration and license, correct? He could have sought a consensual encounter with my client, as an officer could have, yes. Could have asked for it through the closed window of the passenger side. He could have walked around and asked for it through the closed window of the driver's side. Could have asked your client to open either of those windows and spoken through those windows. All that would have been permissible, right? Not entirely, Your Honor. And particularly if the officer is walking around the front of the car, if the officer is at the driver's side, once the officer sees the requisite DMV paperwork that is emblazoned on the windshield of my client's car, there is no reasonable suspicion. There's no reason to detain him for the purpose of asking any of those questions. Before he sees that permit, what about, can he, before he sees the permit, open the passenger side door as long as he doesn't break the plane and ask your client for his registration and license? He can not, Your Honor, because even opening the door under Jones and the property-based theory of search, that is a search. It is a physical occupation of an effect, and Jones makes plain that a vehicle is an effect within the original meaning of the Constitution. If I might, Your Honor, I see that I'm already near the end of my time. I'd like to reserve the remainder and any additional for review. We'll give you two minutes. Thank you very much. We'll hear from the government now. Good morning, Your Honors. May it please the Court, my name is Briggs Matheson, and I represent the United States in this appeal. The District Court did not err because there was nothing unreasonable about Officer Wilms' efforts simply to communicate with Mr. N. Gumeze in initiating a conceitably lawful investigative detention of his vehicle. The parties agree that at the inception of the encounter, Officer Wilms had reasonable suspicion to initiate a lawful investigative detention of the vehicle. Counsel, I want to stop you really quick and get your position on why it is that the District Court did not err by declining to have an evidentiary hearing on that point about what the officer saw or didn't see with regard to the temporary permit in the window. So can you flesh that out a little bit about why it is you think that there was no need for the Court to do that? Certainly, Your Honor. The District Court did not abuse its discretion in declining to hold an evidentiary hearing based on the allegations that Mr. N. Gumeze put forth in his declaration and the supporting declaration for his motion to suppress. And that's because, as the District Court found, Mr. N. Gumeze did not put forth any specific non-speculative factual allegations that actually conflicted with the officer's testimony in his own sworn declaration that he did not notice the bill of sale on the windshield at the time he initiated that encounter. And I think it's important in... Sorry to interrupt you again. It seems to me, I mean, I understand that we don't have directly contradictory statements. I saw it or he saw it. No, I didn't. That would be a direct contradiction. But isn't it fair to say that Mr. N. Gumeze did not believe what the officer said? And is that enough of a reason to have a hearing? It's not enough, Your Honor. The standard is not simply whether the defendant says that he does not believe the officer. And the standard to require the District Court to hold an evidentiary hearing is much higher. It requires that a defendant put forth sufficiently non-speculative facts that, if treated as true, would have required the District Court to grant the relief that he sought. And the relief that he sought in this case is suppression of the evidence. And Mr. N. Gumeze's allegations fall short not only of that standard, but of even creating a material conflict with what the officer said. There are not sufficiently definite facts in Mr. N. Gumeze's declaration that permit the inference that the officer would have seen the bill of sale from his vantage point. As Mr. Koeninger points out, even according to Mr. N. Gumeze's recitation of what happened in this case, upon opening the passenger door, officer Williams immediately asked Mr. N. Gumeze for his driver's license and registration. And there's nothing in Mr. N. Gumeze's declaration that would suggest that the officer even had an opportunity to view the bill of sale on the windshield prior to asking that question, nor is there any information provided by Mr. N. Gumeze about what the officer would have become aware of had he made split-second eye contact with that bill of sale during the approximately 17 seconds of this purely verbal exchange with Mr. N. Gumeze. And so even if the officer had made eye contact with that bill of sale on the windshield, there's nothing in the record that indicates what information would have thereby been transmitted to the officer and reasonable suspicion would not have instantaneously vanished. Because the question in terms of reasonable suspicion in a case like this involving a vehicle that lacks license plates is whether the ambiguity surrounding the vehicle's registration status has been resolved. That is what would have been anticipated in this case. So I have two follow-up questions on that. Is there any dispute that what the defendant claims was in the window would have satisfied California law? The district court accepted as true Mr. N. Gumeze's allegations for purposes of resolving the motion. And so that was not a contested issue. But the question is not whether the vehicle was in fact in compliance with California law. The question is whether under reasonable suspicion the officer had sufficiently particularized facts giving rise to a reasonable suspicion that something was amiss in terms of the vehicle's registration status. And the parties agree that he did based on the lack of license plates. And so then the question is whether reasonable suspicion was resolved, whether the ambiguity was resolved. That's how the California Court of Appeals put the question in the People v. Dotson case, which is discussed in both parties' briefs. Whether the ambiguity is resolved and the particularized facts giving rise to reasonable suspicion either are confirmed or dispelled. And merely glancing at a rectangle in the windshield during this brief interaction would not have resolved that ambiguity. How do we square that with the Rodriguez case? That seems to say that under California law, if there is a valid temporary permit there and the officer sees it, that that dispels suspicion in and of itself. And that the follow-up questions about, unless you have a reason to think that there's something amiss with what you saw, like it looks defective just facially, then that's the end of the inquiry. I beg your pardon, Your Honor. Are you referring to the Hernandez decision? Yes. I'm sorry. Yes. Well, Hernandez stands for the unremarkable proposition that an officer must have particularized facts supporting reasonable suspicion in order to initiate an investigative detention of a vehicle. And that is always true under the Fourth Amendment. And importantly, it is not contested here. The issue in Hernandez of whether the officer, there was no issue, I should say, in Hernandez of whether the officer was aware of a temporary permit in the window. In fact, it was undisputed in that case that the officer, even before initiating the traffic stop, was aware of the temporary permit on the vehicle. And when he initiated the traffic stop and made contact with the driver and asked the driver for his license and registration, the driver directed the officer to that temporary permit. And the officer conceded in his testimony that the only reason he effectuated the traffic stop in that case was based on a hunch that sometimes temporary permits are not valid. And so the officer never had reasonable suspicion to initiate the encounter at all. But I think what People v. Dotson makes clear, which came after People v. Hernandez, is that the uninvestigated chance that a temporary permit might exist does not constitute a dispelling event that vitiates reasonable suspicion instantaneously. And in that case, in Dotson, the officer testified that he could not recall whether or not he had seen a temporary permit. And that was not sufficient to dispel reasonable suspicion. But again, I want to emphasize that even if the officer had seen the bill of sale, there's no allegation about what he would have seen, that any text was facing inwards, and that he would have instantaneously resolved the ambiguity and been precluded from even asking Mr. N. Gomez for his driver's license and registration. Nor is there any... Can I ask you, before your time runs out, could I just switch to another matter? I just want to Are you conceding for purposes of the appeal that a search did take place of the defendant's car? Putting aside the question whether it was a lawful search, do you concede that there was a search? Yes, Your Honor, with a caveat. And this goes to Judge Miller's question as well, about just what we're talking about when we say a search has taken place. Because following United States v. Jones and the trespassory or intrusion theory of liability under the Fourth Amendment, even calling what took place here a search is a bit of a misnomer. And the Jones court itself recognized in footnote 8 of the opinion that not every trespass onto a vehicle is necessarily a search in the constitutional sense. And so while I think it's appropriate to analyze the constitutionality of the officer's conduct in this case as a Fourth Amendment event that triggers the reasonableness requirement of the Fourth Amendment, I think that merely serves to highlight just why it is so important to apply that reasonableness analysis and to take consideration of the totality of the circumstances and the interest involved and the minimal degree of the intrusion. And that's how this court has... Oh, let me just ask you a couple other things. So you concede a search takes place, as I think you have to under class. Obviously, the search was warrantless, correct? There was no warrant to open the door during the traffic stop. Okay. And the search, I take it you're not arguing any of the traditional exceptions to the warrant requirement, such as inevitable discovery. Is that correct? Yes. With the caveat that I do think, and the government has made this argument in its brief, that the challenged evidence at issue, the firearm would have inevitably been discovered, notwithstanding the presence of the temporary permit. So setting that issue aside. And what about the issue of fruits? If the search was illegal, I know you say it's not, but if the search was illegal, was the gun the fruit of an illegal... Was it a fruit of that illegal search? I want to address each of your questions, Your Honor. I do see I'm over my time, but I'll try to address both of those briefly. With respect to whether it is the fruit of the search, I do think that even if this court were to find that the officer unreasonably opened the extraordinary remedy of suppression would not be appropriate, because suppressing the firearm, in this case, would not deter the actual conduct that is being challenged here, because that did not proximately lead to the discovery of the evidence. But that's a different question, or at least that's different from what I understood the question to be. You haven't, as your friend pointed out, the government has the burden of this evidence was that there was too much attenuation. This evidence wasn't really causally related to the violation, and I did not understand you to have made such an argument in your brief. Did you? The government has argued that the suppression remedy is not appropriate, even if there is a Fourth Amendment violation, and that is in part three of the argument section of the government's brief. Right, but that's different from, I mean, that was, I understood you to be making more of a freestanding exclusionary rule exception argument than an argument that there wasn't the requisite causal relationship between the evidence that was discovered and the constitutional violation. Well, I do think that the question of deterrence is bound up in the question of causation, because the Fourth Amendment's exclusionary rule only applies where it would result in sufficient deterrence, and that in turn depends on whether the discovery of the evidence was in some way proximately caused by the constitutional violation that suppression would deter. I'm still not sure I know the answer to your question about so if something is not the fruit of an illegal search, we don't even have to reach the exclusionary question because it's not the fruit of an illegal search. If the search was illegal, was the gun a fruit of that illegal search, putting aside the issue of whether it should be suppressed? Well, I think this court can affirm the judgment of the district court on any basis and could find on this record that the firearm was not the fruit of the opening of the passenger door, and that would be supported by the record in terms of simply the timeline of events that took place and whether opening the door led to the discovery of the firearm, because this goes back to the question of whether there was a search in a constitutional sense when the officer opened the door. There was no inspection of the vehicle, search for weapons, or visual inspection of Mr. N. Gomezzi at that point in time, and that is not when the firearm was found. Okay. Do either of my colleagues have further questions? Thank you. Thank you, Your Honors. Thank you, Your Honor. Briefly, to the first question, Judge Miller, you're correct. The government has not argued any exception to the warrant requirement in this case, apart from a general freestanding deterrence. There is deterrable conduct here. I think that any reasonable person would find a police officer walking up to their car and, without consent, opening the door to their car and sticking their head inside to be a visceral and startling occurrence. That is deterrable conduct. It's appropriate here. Judge Schill, to your question about whether or not this is the fruit, the gun is the fruit of the search, it is undoubtedly, because there's no dispute that the only reason the vehicle was towed, for a license plate violation, which was originally investigated, is because my client lacked a license. And the government has not proven, it waived inevitable discovery in the first instance, but it certainly has not proven that there was, by a preponderance of the evidence, that this information would have been discovered through some other means. Judge Hunsacker, to your questions about an evidentiary hearing, I don't think an evidentiary hearing is necessary because I think that the search was unlawful under the undisputed facts, but there is a dispute, and there is a specific allegation that was made at the motions hearing by defense counsel that the officer saw. And I direct the court to excerpts of record at page 43. The district court, and I'm quoting here, so your argument is that before he did anything, there are no plates. So before he did anything, he should have looked. Defense counsel, not should have, saw. There is a specific allegation, and that is supported by sufficiently clear facts from my client's declaration, that the document was immediate, was in plain view on the windshield, it was within two feet of the officer's head when he inserted it into the car, that it was, and the district court even recognized this, that this was in his line of sight. That is a clear inference that the officer saw this document. And you're correct, Judge Hunsacker, to what you are asking this question. Under Hernandez, once the officer sees this document, there is no reasonable suspicion. And so while my colleague says that in Hernandez the driver pointed to the document on the windshield, that's true, but the court, that's not the reason that the court found there was no reasonable suspicion. The court in Hernandez found there was no reasonable suspicion from the inception of the start, because the officer saw the document that is on the windshield. And one last point, if I might, there is no dispute that the document that is on the windshield was the documentation for DMV purposes. And the district court itself recognized this at the motions hearing, at the excerpts of record, page 44, and I'm quoting the district court. It's an uncontested fact that there was this DMV piece of paper here, that this is the proper documentation. Thank you, counsel. The case is submitted. We thank both counsel for their helpful arguments. We'll hear argument next in number 19-16459, United States against Kroitor.
judges: Miller, Hunsaker, Schiltz